# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**DARLENE OLIVIA VARELA,**

      **Plaintiff,**

      **vs.**                             **Civ. No. 25-741  JFR**

**FRANK BISIGNANO, Commissioner**
**of Social Security,**

      **Defendant.**

## MEMORANDUM OPINION AND ORDER[1]

**THIS MATTER** is before the Court on the Social Security Administrative Record (Doc. 9)[2] filed September 30, 2025, in connection with Plaintiff's *Motion to Reverse and Remand for Rehearing With Supporting Memorandum,* filed December 12, 2025.  Doc. 12. Defendant filed a Response on March 12, 2025.  Doc. 18.  Plaintiff filed a Reply on March 23, 2026.  Doc. 19.  The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c).  Having meticulously reviewed the entire record and the applicable law and being fully advised in the premises, the Court finds that Plaintiff's Motion is well taken and is **GRANTED**.

## I. Background and Procedural Record

Plaintiff Darlene Olivia Varela (Ms. Varela) alleges she became disabled on April 15, 2017, at the age of forty-two years and eleven months, because of chronic back pain, anxiety,

---

[1]  Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings, and to enter an order of judgment, in this case.  (Docs. 4, 8, 17.)

[2] Hereinafter, the Court's citations to Administrative Record (Doc. 9), which is before the Court as a transcript of the administrative proceedings, are designated as "Tr."

and depression.  Tr. 79, 255.  Ms. Varela completed one year of college in 2005.  Tr. 256.

Ms. Varela worked as a home health care aide and substitute teacher.  Tr. 246, 256.  Ms. Varela

stopped working on March 31, 2018, because of her conditions "and because of other reasons."

Tr. 255.  Ms. Varela's date of last insured is September 30, 2021.[3]  Tr. 1605.  Therefore, to

receive disability insurance benefits, Ms. Varela must show she was disabled prior to that date.

*See Potter v. Sec'y of Health & Human Servs.*, 905 F.2d 1346, 1347 (10th Cir. 1990).

On September 13, 2018, Ms. Varela filed an application for Social Security Disability

Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401

*et seq.*[4]  Tr. 169-77.  On December 17, 2018, Ms. Varela's application was denied.  Tr. 77, 78-

88, 104-06.  On August 12, 2019, it was denied again at reconsideration.  Tr. 89, 90-103, 108-

113.  Upon Ms. Varela's timely request, Administrative Law Judge (ALJ) Holly Hansen held a

hearing on June 16, 2020.  Tr. 42-76.  Ms. Varela appeared telephonically with attorney Michelle

Baca.[5]  *Id.*  On July 21, 2020, ALJ Hansen issued an unfavorable decision.  Tr. 7-25.  On

February 10, 2021, the Appeals Council denied Ms. Varela's request for review.  Tr. 1-3.

On April 1, 2021, Ms. Varela timely filed a Complaint seeking judicial review of the

Commissioner's final decision.  Tr. 894-97 (*see* USDC NM Civ. No. 21-297 JHR (Doc. 1)).  On

January 2, 2022, Magistrate Judge Jerry H. Ritter entered an Order granting the Commissioner's

Unopposed Motion to Remand.  Tr. 898-902.  On June 15, 2022, the Appeals Council entered an

Order Remanding Case to Administrative Law Judge instructing that ALJ Hansen's decision did

---

[3] To qualify for DIB, a claimant must establish that he met the statutory requirements for disability on or before her date of last insured.  *See* 42 U.S.C. §§ 416(i)(3), 423(c)(1); *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010).

[4] On October 10, 2018, Ms. Varela filed an application for Social Security Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. § 1381 *et seq.*   Tr. 178-86.  The Administrative Record contains no other documents related to this application.

[5] Ms. Varela is represented in these proceedings by Attorney Laura Johnson.  Doc. 1.

2

not adequately consider the supportability of the medical opinions in the record and that the assessed mental RFC did not adequately reflect limitations corresponding to the assessed moderate limitations in concentration, persistence, or pace. Tr. 905-07.

On June 21, 2023, ALJ Michelle Lindsay held a second administrative hearing. Tr. 836-63. On July 24, 2023, ALJ Lindsay issued an unfavorable decision. Tr. 804-26. On September 22, 2023, Ms. Varela timely filed a Complaint seeking judicial review of the Commissioner's final decision. *See* USDC NM Civ. No. 23-818 WJ/JMR (Doc. 1). On March 26, 2024, District Judge William P. Johnson entered an Order granting the Commissioner's Unopposed Motion to Remand. Tr. 1656-60. On April 27, 2024, the Appeals Council entered an Order Remanding Case to Administrative Law Judge instructing that the ALJ's decision (1) did not contain an adequate evaluation of the medical source opinion of consultative examiner Jennifer Como, M.D., and that the reasoning for discounting Dr. Como's opinion was deficient; (2) did not contain an adequate evaluation of medical source opinions Felicia Rivera, MSW, LCSW, Matthew Valeriano, M.D., and Laura Robinson, CNP, and that further consideration was warranted; and (3) did not adequately evaluate the nature, severity, and limiting effects of claimant's obesity. Tr. 1661-66.

On April 3, 2025, ALJ Lindsay held a third administrative hearing. Tr. 1629-1655. On April 24, 2025, ALJ Lindsay issued an unfavorable decision. Tr. 1600.1617.

On August 5, 2025, Ms. Varela filed the Complaint now before the Court. Doc. 1.

## II. Applicable Law

### A. Disability Determination Process

An individual is considered disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

3

expected to result in death or which has lasted or can be expected to last for a continuous period

of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance

benefits); *see also* 42 U.S.C. § 1382(a)(3)(A) (pertaining to supplemental security income

disability benefits for adult individuals).  The Social Security Commissioner has adopted the

familiar five-step sequential analysis to determine whether a person satisfies the statutory criteria

as follows:

> (1) At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[6]  If the claimant is engaged in substantial gainful activity, she is not disabled regardless of his medical condition.

> (2) At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s).  If the claimant does not have an impairment(s) or combination of impairments that is severe and meets the duration requirement, she is not disabled.

> (3) At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement.  If so, a claimant is presumed disabled.

> (4) If, however, the claimant's impairments do not meet or equal in severity one of the listings described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform her "past relevant work."  Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [claimant] can still do despite [her physical and mental] limitations." 20 C.F.R. § 404.1545(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3). Second, the ALJ determines the physical and mental demands of claimant's past work.  Third, the ALJ determines whether, given claimant's RFC, the claimant is capable of meeting those demands.  A claimant who is capable of returning to past relevant work is not disabled.

> (5) If the claimant does not have the RFC to perform her past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age,

---

[6] Substantial work activity is work activity that involves doing significant physical or mental activities.  20 C.F.R. §§ 404.1572(a).  "Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before."  *Id.*  "Gainful work activity is work activity that you do for pay or profit."  20 C.F.R. §§ 404.1572(b).

education, and work experience.  If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).  The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5, 107 S.Ct. 2287, 2294, n.5, 96 L.Ed.2d 119 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy.  *Id.*  A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis.  *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 801 (10th Cir. 1991).

### B.      Standard of Review

The Court reviews the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied.  42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).  A decision is based on substantial evidence where it is supported by "relevant evidence [that] a reasonable mind might accept as adequate to support a conclusion."  *Langley*, 373 F.3d at 1118.  A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record[,]" Langley, 373 F.3d at 1118, or if it "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  Therefore, although an ALJ is not required to discuss every piece of evidence, "the record must demonstrate that the ALJ considered all of the evidence," and "the [ALJ's] reasons for finding a claimant not disabled" must be "articulated with sufficient particularity."  *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996).  Further, the decision

must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005). In undertaking its review, the Court may not "reweigh the evidence" or substitute its judgment for that of the agency. *Langley*, 373 F.3d at 1118.

### III. <u>Analysis</u>

The ALJ determined that Ms. Varela met the insured status requirements of the Social Security Act through September 30, 2021, and that she had not engaged in substantial gainful activity since her alleged onset date of April 15, 2017, through her date of last insured. Tr. 1605. She found that Ms. Varela had severe impairments of degenerative disc and facet disease of the lumbar spine, chondromalacia patella, trochanteric bursitis of the hips, chronic pain syndrome, obesity, depressive disorder, anxiety disorder, and posttraumatic stress disorder. Tr. 1606. The ALJ also found that Ms. Varela had nonsevere impairments of status post hysterectomy, cholecystectomy and endometriosis surgery, and restless leg syndrome. *Id.* The ALJ determined that Ms. Varela's impairments did not meet or equal in severity any of the listings described in the governing regulations, 20 CFR Part 404, Subpart P, Appendix 1. Tr. 1606-1608. Accordingly, the ALJ proceeded to step four and found that Ms. Varela had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) through her date last insured, except for the following limitations:

> she can occasionally climb stairs and ramps, but can never climb ladders, ropes, or scaffolds. She can occasionally stoop, crouch, kneel, and crawl. She must avoid more than occasional exposure to extreme cold and must completely avoid unprotected heights. She is able to understand, remember, and carry out simple instructions and make commensurate simple work-related decisions. She is able to maintain attention and concentration to perform and persist at simple tasks at a consistent pace for two hours at a time without requiring redirection to task. She can have occasional interaction with the general public and superficial interactions with coworkers and supervisors. She requires work involving no more than

6

occasional change in the routine work setting and no more than occasional independent goal setting or planning.

Tr. 1608-15.  The ALJ determined that Ms. Valera was unable to perform any past relevant work.  Tr. 1615.  The ALJ determined that through the date last insured, considering Ms. Varela's age, education, work experience, and residual functional capacity, that there are jobs that exist in significant numbers in the national economy that Ms. Varela can perform.[7]  Tr. 1615-1616.  The ALJ determined, therefore, that Ms. Varela was not disabled at any time from April 15, 2017, through September 30, 2021.  *Id.*

In support of her Motion, Ms. Varela argues that:

A. The ALJ failed to follow the United States District Court ("USDC") mandate and subsequent Order of the Appeals Council ("AC") to properly consider opinion evidence from treating providers Matthew Valeriano, MD, and Laura Robinson, CNP; B. The ALJ failed as a matter of law by neglecting to make the required factual findings at Sequential Evaluation Process ("SEP") Step Five; and C. The ALJ's residual functional capacity ("RFC") is not based on substantial evidence and contrary to law because she improperly discounted Ms. Varela's complaints of chronic pain and impermissibly excluded her diagnosis of somatic symptom disorder upon her subjective-allegations analysis.

Doc. 12 at 1-2.

For the reasons discussed below, the Court finds that the ALJ failed to properly consider the opinion evidence of treating providers Dr. Valeriano and CNP Robinson in compliance with the AC Order and that the ALJ's reasons for finding their opinions not persuasive are not supported by substantial evidence.  This case, therefore, requires remand.

---

[7] The VE expert identified representative occupations of Table Worker (DOT code 739.687-182, 12,900 jobs nationally); Final Assembler (DOT code 713.687-018, 26,400 jobs nationally); and Document Preparer (DOT code 240.587-018, 95,000 jobs nationally).  Tr. 1616.

A.    <u>**AC Order and Evaluation of Opinion Evidence**</u>

1.    <u>**Arguments**</u>

Ms. Varela first argues that the ALJ failed to follow the United States District Court ("USDC") mandate and subsequent Order of the Appeals Council ("AC Order") to properly consider opinion evidence from treating providers Matthew Valeriano, MD, and Laura Robinson, CNP.  Ms. Varela argues that the ALJ disregarded the AC Order requiring that she resolve her inadequate evaluation of medical source evidence and instead reasserted that their opinions were provided "well after the date last insured, and are not persuasive with regard to the period at issue."  Doc. 12 at 8.  Ms. Varela argues that the Tenth Circuit has found that "a treating physician may provide a retrospective diagnosis of a claimant's condition" if that diagnosis goes to the question of whether the claimant was disabled prior to his date last insured.  *Id.* at 9 (citing *Potter v. Sec'y of Health & Human Servs.*, 905 F.2d 1346, 1348-49 (10th Cir. 1990)).  Here, Ms. Varela argues that the opinions are relevant to the period at issue because (1) they address Ms. Varela's severe impairments being considered by the ALJ; (2) CNP Robinson was treating Ms. Varela during the relevant period of time; and (3) Dr. Valeriano, a chronic pain specialist, began treating within three months after Ms. Varela's last date insured.  *Id.* at 9-10.  Ms. Varela notes that both providers completed forms that asked them to provide a retrospective opinion from at least April 15, 2017.  *Id.*  Ms. Varela argues that the ALJ, while noting the prescribed time frame of the opinions, nonetheless failed to consider how this evidence could infer or disclose the severity, continuity, and/or progression of Ms. Varela's impairments existing before the date last insured.  *Id.*  Ms. Varela further argues that the ALJ failed to address Dr. Valeriano's expertise in dealing with chronic pain or Ms.Varela's treatment history with CNP Robinson during the relevant period of time.  *Id.*

Ms. Varela additionally argues that the ALJ failed to adequately evaluate the opinions as instructed in the mandate and pursuant to 20 C.F.R. § 404.1520c. *Id.* at 10-12. For instance, Ms. Varela argues that the ALJ fails to address the supportability prong in her medical opinion analysis by failing to cite or acknowledge the providers' treatment notes documenting Ms. Varela's ongoing presentation with complaints of and treatment for back pain and sciatica, *inter alia*, and her difficulty with ambulation and limited range of motion due to pain. *Id.* at 10-12. Ms. Varela argues that the ALJ's consistency analysis is similarly flawed because the ALJ improperly relies solely on certain medical findings from a June 22, 2019, State agency consultative medical exam to the exclusion of the overwhelming medical evidence record that demonstrates ongoing complaints of back and related pain and associated functional limitations in the weeks, months, and years before and after the June 22, 2019, consultative exam. *Id.* at 12-14.

Finally, Ms. Varela argues that the ALJ improperly mischaracterized the opinions of Dr. Valeriano and CNP Robinson as to Ms. Varela's ability to do work-related mental functions as involving "mental" findings or limitations, when in fact they were non-physical work-related abilities impacted by pain and/or fatigue. *Id.* at 15.

Ms. Varela argues that these errors are harmful. *Id.* Ms. Varela argues that the ALJ had a duty to follow the District Court mandate and subsequent AC Order. *Id.* She argues that the ALJ's decision suffers from the same flaws that previously required remand and that this matter, therefore, requires remand again. *Id.*

In response, the Commissioner asserts that the ALJ materially complied with the AC Order and that Ms. Varela has provided no basis for remand. Do. 18 at 4-13. The Commissioner asserts that the AC Order directed the ALJ to do one specific thing on remand: "Give further

9

consideration to the medical source opinion(s) and prior administrative medical findings pursuant to the provisions of 20 CFR 404.1520c." *Id.*  The Commissioner asserts, therefore, that the ALJ was not required to address the temporal relevance of the opinions, *i.e.,* how the providers made inferences about the progression of Ms. Varela's impairments or how their opinions might have borne upon the severity of condition prior to the date last insured. *Id.* Instead, the Commissioner asserts that the ALJ articulated the supportability and consistency factors pursuant to the provisions of 20 C.F.R. § 404.1520c. *Id.*  The Commissioner asserts, therefore, that the ALJ materially complied with the mandatory language of the AC Order.

As for the supportability and consistency factors, the Commissioner asserts that there is no evidence that Dr. Valeriano treated Ms. Varela during the relevant period of time. *Id.*  The Commissioner further asserts that the ALJ discussed and summarized the relevant evidence of record, including records from other providers at CNP Robinson's place of employment (El Centro), and that CNP Robinson's cited treatment notes during the relevant period do not contain uncontroverted evidence the ALJ chose not to rely upon or significantly probative evidence the ALJ decided to reject. *Id.*  The Commissioner also asserts that the records the ALJ cites from El Centro showing "no more than moderate limitations in the area of functioning" are not inconsistent with CNP Robinson's treatment notes during the relevant period.  The Commissioner argues that Ms. Varela's argument that Dr. Valeriano and CNP Robinson's opinions were supported by their treatment notes and consistent with the evidence at large invites this Court to reweigh the evidence which the Court should decline to do. *Id.*

Finally, the Commissioner asserts that the forms utilized by Dr. Valeriano and CNP Robinson to assess Ms. Varela's non-physical functional limitations describe the *mental* work-related limitations set forth in the agency's regulations. *Id.*  The Commissioner, therefore,

asserts that the ALJ's determination that their assessed *mental findings* were inconsistent with records from El Centro is reasonable. *Id.*

In reply, Ms. Varela contends that the ALJ did not follow the mandate which ordered "proper consideration of Dr. Valeriano and CNP Robinson's opinions, particularly in regard to their temporal relevance," and did not include any supportive evidence when discussing Dr. Valeriano and CNP Robinson's opinion. Doc. 19 at 2-8. Ms. Varela argues this is legal error.

### 2.    Applicable Legal Standards

### (a)    The Mandate Rule

The "mandate rule" doctrine provides that "there must be compliance with the reviewing court's mandate." *Grigsby v. Barnhart*, 294 F.3d 1215, 1218 (10th Cir. 2002) (quoting *Ute Indian Tribe of the Uintah & Ouray Reservation v. Utah*, 114 F.3d 1513, 1520 (10th Cir. 1997)). This doctrine "appl[ies] to judicial review of administrative decisions, and 'requires the administrative agency, on remand from a court, to conform its further proceedings in the case to the principles set forth in the judicial decision, unless there is a compelling reason to depart.'" *Id.* (quoting *Wilder v. Apfel*, 153 F.3d 799, 803 (7th Cir.1998)). In addition, the regulations provide that, in the event of a remand order, the ALJ "shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order." 20 C.F.R. § 404.977(b).

### (b)    Evaluation of Medical Opinion Evidence

In evaluating the persuasiveness of medical opinions, the SSA considers five factors: (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors that support or contradict a medical opinion or finding. 20 C.F.R. §

404.1520c(c).  An ALJ is always required to explain how he or she considered the first two factors: "[W]e will explain how we considered the supportability and consistency factors for a medical source's medical opinions ... in your determination or decision."  20 C.F.R. § 404.1520c(b)(2); *see also Nielsen v. Comm'r, SSA*, No. 21-4136, 2022 WL 15570650, at *2 (10th Cir. 2022) (unpublished) ("An ALJ must explain how he or she considered the supportability and consistency factors.") (citation and quotation omitted).  The ALJ is only required to explain how he or she considered the other three factors if differing medical opinions are equally well-supported and consistent with the record. 20 C.F.R. § 404.1520c(b)(3).

> As the Tenth Circuit explained,
>
> "[s]upportability" examines how closely connected a medical opinion is to the evidence and the medical source's explanations: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), the more persuasive the medical opinions will be." [20 C.F.R.] § 404.1520c(c)(1); *id.* § 416.920c(c)(1). "Consistency," on the other hand, compares a medical opinion to the evidence: "The more consistent a medical opinion(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) will be." *Id.* § 404.1520c(c)(2); *id.* § 416.920c(c)(2).

*Zhu v. Comm'r, SSA*, No. 20-3180, 2021 WL 2794533, at *6 (10th Cir. Jul. 6, 2021) (unpublished) (brackets and ellipses omitted).

While the revised regulations allow the ALJ some discretion in how she articulates her findings on the persuasive value of medical opinion evidence, it provides no leeway as to whether she articulates such findings.  *See* 20 C.F.R. § 404.1520c(b); (The ALJ "will articulate ... how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings in [the] case record").  In addition, "all [of] the ALJ's required findings must be supported by substantial evidence, and [s]he must consider all relevant medical evidence in making those findings." *Grogan*, 399 F.3d at 1262 (citations and quotation marks omitted).  The

ALJ's decision must provide the Court "with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen*, 436 F.3d at 1165 (quotation omitted).

Judges in this district have found bare conclusions regarding the persuasiveness of a medical opinion insufficient.

> [A] bare conclusion regarding the persuasiveness of a medical opinion does not suffice under 20 C.F.R. § 404.1520c. An ALJ must, at the very least, provide an explanation that allows the reviewing court to follow his reasoning and communicates how he considered the factors of consistency and supportability for each medical source's opinions. *See id.* § 404.1520c. Although the regulation does not prescribe the depth with which an ALJ must discuss the factors of supportability and consistency, the explanation must at least eschew rote analysis and conclusory explanations and discuss the crucial factors in any determination with sufficient specificity to enable the reviewing court to decide whether the determination is supported by substantial evidence . . . .

*Zambrano v. Kijakazi*, No. 20cv1356 KRS, 2022 WL 1746765, at *5 (D.N.M. May 31, 2022) (quotation, alterations, and citation omitted); *see also Frazer v. Kijakazi*, No. 20cv1147 GBW, 2022 WL 682661, at *6 (D.N.M. Mar. 8, 2022) ("An ALJ's failure to provide any reasons for rejecting a medical source opinion beyond stating that it is inconsistent with the record is grounds for remand."); and *Klein v. Kijakazi*, No. 20cv1199 LF, 2022 WL 2827582, at *7 (D.N.M. Jul. 20, 2022) (ALJ finding an opinion "somewhat persuasive" without any explanation is not legally sufficient).

### (c)      Restrospective Diagnosis

The Tenth Circuit has explained that the relevant question in the face of a retrospective diagnosis is whether there is evidence of actual disability prior to the expiration of a claimant's insured status. *Potter v. Sec'y of Health & Human Servs.*, 905 F.2d 1346, 1348-49 (10th Cir. 1990); *see also Bird v. Commissioner of Social Sec. Admin.*, 699 F.3d 337, 341 (4th Cir. 2012) (finding that post-dated-last-insured medical evidence generally is admissible in a Social

Security disability determination in such instances in which that evidence permits an inference of linkage with the claimant's pre-DLI condition).

> Evidence bearing upon an applicant's condition subsequent to the date upon which the earning requirement was last met is pertinent evidence in that it may disclose the severity and continuity of impairments existing before the earning requirement date or may identify additional impairments which could reasonably be presumed to have been present and to have imposed limitations as of the earning requirement date.

*Baca v. Dep't of Health & Human Servs.*, 5 F.3d 476, 479 (10th Cir. 1993) (remanding in part because ALJ ignored evidence from before and after claimant's date last insured in finding there was no probative medical evidence documenting disability during the relevant time period) (quoting *Gold v. Sec'y of Health, Educ. & Welfare*, 463 F.2d 38, 42 (2d Cir. 1972)). The key is that the subsequent evidence must bear upon the severity of a claimant's impairments during the period between the onset date and the date last insured. This nexus is established by evidence from which it could reasonably be presumed that the limitations existed prior to the expiration of the insured status. *Baca,* 5 F.3d at 479. When there is no evidence in the record suggesting that a claimant has experienced a disabling impairment during the insured period, subsequent evidence, including a physician's retrospective diagnosis, is insufficient. *Coleman v. Chater*, 58 F.3d 577, 579 (10th Cir. 1995).

> 3. **The ALJ Failed to Comply With the AC Order and the ALJ's Evaluation of the Medical Opinion Evidence Is Insufficient and Not Supported by Substantial Evidence**

The relevant portion of the AC Order states as follows:

. . .

> The Appeals Council hereby vacates the final decision of the Commissioner of Social Security and remands this case to an Administrative Law Judge for resolution of the following issues:

. . .

14

The hearing decision does not contain an adequate evaluation of the medical source opinions of Felicia Rivera, MSW, LCSW; Matthew Valeriano, M.D.; and Laura Robinson, CNP (Decision, page 18; Citing Exhibits 18F;[8] 25F;[9] 29F;[10] 30F;[11] 31F[12]).  The Administrative Law Judge finds these opinions unpersuasive "given the time period during which they were issued" with notation that they "were issued after the claimant's date last insured expired and there is no indication that they relate back to the time period prior to the expiration of the date last insured" (Decision, page 18).  However, the opinions are on forms that ask each care provider to "consider the [claimant's] medical history and chronicity of findings as from at least [April 15, 2017] to current evaluation" (Exhibits 18F, page 1; 25F, pages 2-3; 29F, page 2; 31F, pages 2-3).  . . .  Further, Ms. Robinson had been treating the claimant since at least May 2021 at El Centro Family health, where the claimant had been getting all of her primary care since [] at least July 2017 (Exhibit 20F, pages 14-15)).  Further consideration is warranted.

. . .

Upon remand the Administrative Law Judge will:

. . .

Give further consideration to the medical source opinion(s) and prior administrative medical findings pursuant to the provisions of 20 CFR 404.1520c.  As appropriate, the Administrative Law Judge may request the medical source provide additional evidence and/or further clarification of the opinion (20 CFR 404.1520b).

. . .

Tr. 1664.

---

[8] Medical Assessment of Ability to Do Work-Related Activities (Mental) by Felicia Rivera, MSW LCSW, dated July 19, 2022.  Tr. 1235-36.

[9] Medical Assessment of Ability to Do Work-Related Activities (Physical) by Laura Robinson, CNP, dated April 25, 2023 (Tr. 1528), and Medical Assessment of Ability to Do Work-Related Activities (Non-Physical) by Laura Robinson, CNP, dated April 25, 2023 (Tr. 1529).

[10] Medical Assessment of Ability to Do Work-Related Activities (Mental) by Felicia Rivera, MSW LCSW, dated May 1, 2023.  Tr. 1540-41.

[11] Medical Letter from Felicia Rivera, MSW, LCSW dated May 15, 2023.  Tr. 1543-44.

[12] Medical Assessment of Ability to Do Work-Related Activities (Physical) by Matthew Valeriano, M.D., dated May 19, 2023 (Tr. 1546), and Medical Assessment of Ability to Do Work-Related Activities (Non-Physical) by Matthew Valeriano, M.D., dated May 19, 2023 (Tr. 1546).

15

In her determination, the ALJ discussed Dr. Valeriano's opinion evidence as follows:

In May 2023, Matthew Valeriano, MD, stated that, from at least April 2017, the claimant could lift and carry 20 pounds occasionally, 10 pounds frequently, stand and walk two hours, and alternate between sitting and standing in an eight-hour day. She had manipulative and postural limitations. She had marked limitations in maintaining concentration and attention for extended periods of time; moderate limitations in maintaining regular attendance and being punctual within customary tolerance because of pain or fatigue; marked limitations in completing a normal workday or workweek; and moderate limitations in interacting with others. She would miss about two days of work per month and be off task about 20% of the day (Exhibit 31F). The opinions are not persuasive. They are not supported by explanation or references to exam findings. They are inconsistent with medical findings from Dr. Como that show 5/5 upper extremity strength, 5/5 strength in the ankles with plantar and dorsiflexion, and 4/5 strength in the remainder of the lower extremities. They are inconsistent with findings of steady and symmetric gait, and normal fine and gross manipulation (Exhibit 7F).[13] The mental findings are

---

[13] On June 22, 2019, Ms. Valera presented to Jennifer Como, M.D., of EverMedExams. Tr. 675-80. Ms. Valera alleged disability due to depression, anxiety and chronic back pain. *Id.* Dr. Como took present illness, past medical/surgical, medication, social, and family histories. *Id.* Dr. Como also conducted a physical exam, including measuring muscle strength and range of motion. *Id.* Dr. Como's impressions included:

The claimant is a 45 year old female with a history of low back pain which has progressed over the years since an MVA 20 years ago. . . . On PE, she is visibly uncomfortable with any change of positions. She stops frequently during maneuvers due to extreme low back pain and lower back spasms. She has positive straight leg raise supine and sitting and it is difficult for her to get to a sitting position from supine without moderate assistance. She has decreased strength in her right lower extremity. . . .

The claimant has moderate limitations with sitting, standing and walking due to low back pain. The claimant does not need an assistive device with regards to short and long distances and uneven terrain. The claimant has moderate limitations with lifting and carrying weight due to low back pain. There are limitations with bending, stooping, crouching and squatting and the claimant will not be able to perform these due to low back pain. There are no limitations on reaching, grasping, handling, fingering and feeling. There are no relevant visual or communicative limitations. There are relevant work place environmental limitations due to depression and anxiety.

Tr. 680.

The ALJ found Dr. Como's opinion *not persuasive*. Tr. 1613. The ALJ explained that:

Dr. Como based her limitations on her examination report, but did not phrase the limitations in vocationally relevant terms. It is not fully consistent with, and does not consider diagnoses of chondromalacia patella, trochanteric bursitis of the hips, chronic pain syndrome, and obesity that limits the claimant to a range of sedentary work with postural and environmental limitation []. Symptoms and limitations noted at the exam were not present in contemporaneous treatment notes, so the opinion which is based on that exam is not supported by the medical record, nor consistent with the record as a whole.

*Id.*

16

inconsistent with records from but [sic] El Centro that show no more than moderate limitations in any area of functioning (Exhibits 2F/65-66, 5F/14-16, 20F/54-56).[14]

Tr. 1614.  In her determination, the ALJ discussed CNP Robinson's opinion evidence as follows:

In April 2023, May 2023, and February 2025, Laura Robinson, [C]NP, stated that claimant could perform less than a full range of sedentary work, lifting and carrying five pounds, standing and walking less than two hours, and sitting less than two hours in an eight-hour day.  She also had manipulative and postural limitations. She had marked to extreme mental limitations.  The limitations existed since April 2017 (Exhibits 25F, 27F, 36F).  The opinions are not persuasive.  They are not supported by explanation or references to exam findings.  They are inconsistent with medical findings from Dr. Como that show 5/5 upper extremity strength, 5/5 strength in the ankles with plantar and dorsiflexion, and 4/5 strength in the remainder of the lower extremities.  They are inconsistent with findings of steady and symmetric gait, and normal fine and gross manipulation (Exhibit 7F).[15]  The mental findings are inconsistent with records from but [sic] El Centro that show no more than moderate limitations in any area of functioning (Exhibits 2F/65-66, 5F/14-16, 20F/54-56).[16]

Tr. 1614.  The ALJ states in summary, that "multiple opinions issued by various providers well after the date last insured, are not persuasive with regard to the period at issue."  *Id.*

The Court finds that the ALJ's bare conclusion and disregard of Dr. Valeriano's and CNP Robinson's opinions based on temporal relevance fails to properly address and resolve her previous inadequate evaluation of the post-dated-last-insured medical opinions in accordance with the AC Order.  The AC Order explains that remand was necessary to resolve certain issues

---

[14] Exhibit 2F/65-66 is a July 26, 2017, treatment note by Carla A. Curtis-Klinger, PA-C (El Centro).  Tr. 489-90. Ms. Varela presented for a medication review requested by her mental healthcare therapist, Felicia J. Rivera, MSW, LCSW.  *Id.*  This treatment record does not contain an assessment of work-related mental functional limitations.  *Id.*

Exhibit 5F/14-16 is a February 5, 2019, treatment note by Michael Lee, PA-C (El Centro).  Tr. 540-44.  Ms. Varela presented for trigger point injections.  *Id.* This treatment record does not contain an assessment of work-related mental functional limitations.  *Id.*

Exhibit 20F/54-46 is a May 21, 2020, treatment note by Michael Lee, PA-C (El Centro).  Tr. 1347-49.  Ms. Varela presented for trigger point injections.  *Id.*  This treatment record does not contain an assessment of work-related mental functional limitations.  *Id.*

[15] *See* fn. 13, *supra.*

[16] *See* fn. 14, *supra.*

– one of the issues being that the ALJ's July 24, 2023, hearing decision did not contain an adequate evaluation of the post-dated-last-insured medical source opinions.  In doing so, the AC Order explained the bases for the ALJ's inadequate evaluation: (1) the assessment forms, even though post-dated-last-insured, explicitly instructed the medical providers to consider Ms. Varela's medical history and chronicity of findings for a time period that included the relevant period of time; and (2) CNP Robinson had treated Ms. Varela for several months before her date of last insured at the healthcare facility where Ms. Varela had been a patient for several years.[17]  With these explanations, the AC Order stated that "[f]urther consideration is warranted." The AC Order then provided remand instructions to consider the medical opinions in accordance with the applicable regulatory provisions, *i.e.,* 20 C.F.R. § 404.1520c.

The ALJ's determination fails to address or analyze at all whether the post-dated-last-insured medical opinion evidence permits an inference of linkage and/or or provides evidence bearing on the severity, continuity, and/or progression of Ms. Varela's impairments existing during the relevant period of time.  Notably, the AC Order specifically brings to the ALJ's attention that CNP Robinson had treated Ms. Varela during the relevant period a time, presumably because it found this to be pertinent information for resolving the inadequate evaluation of CNP Robinson's post-dated-last-insured medical opinions.  The ALJ, however, fails to even cite CNP Robinson's treatment notes from the relevant period of time to determine whether her post-dated-last-insured opinions permit an inference of linkage with Ms. Varela's pre-DLI condition.  Additionally, the Administrative Record demonstrates that when Ms. Varela presented to Dr. Valeriano three months after her date of last insured, she did so "with severe,

---

[17] The AC Order also addressed the ALJ's rejection of Felicia Rivera's medical opinion evidence and pointed out that Felicia Rivera, MSW, LCSW, was Ms. Varela therapist since March 2018, had seen Ms. Varela 58 times as of May 2023, and was involved in Ms. Varela's care in 2015, 2016 and 2017.  Tr. 1664.

persistent, intractable lower back pain" and "failed conservative treatment." Tr. 1456. The ALJ, however, is silent with respect to the context of Dr. Valeriano's post-dated-last-insured medical opinion and fails to discuss its probative value in establishing a nexus to Ms. Varela's assessed limitations and/or disability during the relevant period of time. *Baca*, 5 F.3d at 479.

In sum, the Court finds that the AC Order directed the ALJ to resolve the issue of temporal relevance related to post-dated-last-insured medical opinions and the ALJ failed to do so. This is error. *See* 20 C.F.R. § 404.977(b) (explaining that the regulations mandate that an ALJ shall take any action that is ordered by the Appeals Council).

The Court also finds that the ALJ's evaluation and discussion of Dr. Valeriano's and CNP Robinson's opinion evidence is legally insufficient because the ALJ did not adequately discuss the supportability or consistency of their opinions and her explanations are not supported by substantial evidence. *See* C.F.R. § 404.1520c(b)(2); *see also Nielsen*, 2022 WL 15570650, *2. For instance, as to both opinions the ALJ states they are not persuasive because "they are not supported by explanation or references to exam findings." This bare explanation, however, is insufficient and completely ignores information on the assessment forms. Here, the forms ask the respective providers "[w]hat are the medical findings supporting this opinion?" to which both CNP Robinson and Dr. Valeriano clearly checked the boxes provided that indicate *observations, records, and objective testing*. Tr. 1528-29, 1546-47, and 1855-56. The ALJ's explanation also ignores that in addition to indicating she relied on *observations, records, and objective testing*, CNP Robinson does in fact provide limited comments and explanations on the assessment forms she completed. Tr. 1528-29, 1855-56. Further, the ALJ's explanation fails to demonstrate that she considered CNP Robinson's or Dr. Valeriano's respective treatment notes and/or other relevant medical evidence in determining the supportability of their opinions as she is required to

19

do.  *See Grogan*, 399 F.3d at 1262 ("all [of] the ALJ's required findings must be supported by substantial evidence, and [s]he must consider all relevant medical evidence in making those findings.").  Indeed, the ALJ's determination makes no reference to CNP Robinson's or Dr. Valeriano's treatment notes at all in her evaluation of their opinion evidence.[18]

As for the ALJ's consistency explanation, the ALJ explains that the medical opinions "are inconsistent with medical findings from Dr. Como . . . ."  In doing so, the ALJ selectively cites certain of Dr. Como's exam findings that measured Ms. Varela's muscle strength, her symmetric gait, and normal hand and finger movement.[19]  Unclear to the Court, however, is the ALJ's reliance on these findings from Dr. Como's exam to support inconsistency with CNP Robinson's and Dr. Valeriano's opinions when the ALJ found Dr. Como's opinion to be unpersuasive based on, *inter alia*, her failure to assess limitations in vocationally relevant terms, her failure to consider diagnoses relevant to Ms. Varela's ability to do work-related physical activities which the ALJ found consistent with sedentary work, and because Dr. Como's "[s]ymptoms and limitations noted at the exam were not present in contemporaneous treatment notes, so the opinion which is based on that exam is not supported by the medical record, nor consistent with the record as a whole."[20]  In other words,  the ALJ on the one hand disregarded Dr. Como's exam findings to support her evaluation of Dr. Como's opinion as unpersuasive while on the other hand seeks to elevate their significance to find that CNP Robinson's and

---

[18] The Commissioner concedes that the ALJ did not cite any of CNP Robinson's notes, but argues that the ALJ's discussion elsewhere of records from providers at CNP Robinson's place of employment suffices.  Doc. 18 at 9.  The Commissioner may not rationalize the ALJ's decision post hoc, and "[j]udicial review is limited to the reasons stated in the ALJ's decision." *Carpenter*, 537 F.3d at 1267.  Additionally, although Dr. Valeriano did not treat Ms. Varela during the relevant period of time, the Administrative Record contains treatment notes related to her pain management. Tr. 1442-43, 1448-50, 1452-53, 1456-57.

[19] *See* fn. 13, *supra*.

[20] *See* fn. 13, *supra*.

20

Dr. Valeriano's opinions are inconsistent with other medical evidence. This is nonsensical and fails to provide an explanation that allows the Court to follow the ALJ's reasoning. Additionally, the ALJ appears to have overlooked in her cut and paste and rote evaluations of the opinion evidence that Dr. Valeriano's assessed limitations of Mr. Varela's ability to do work-related physical activities are for the most part consistent with the ALJ's RFC assessment, *i.e.,* sedentary work. Finally, as for the ALJ's explanation regarding inconsistent mental findings, the ALJ explains only that "[t]he mental findings are inconsistent with records from [] El Centro that show no more moderate limitations in any area of functioning." The treatment notes the ALJ cites, however, do not contain any assessments of Ms. Varela's ability to do work-related mental activities.[21] Nor do these records address CNP Robinson's and Dr. Valeriano's assessments with respect to work absences or being off task due to Ms. Varela's pain and fatigue related to her impairments and/or treatments. Thus, the ALJ's bare explanation regarding inconsistency is insufficient and not supported by substantial evidence.

In sum, the Court finds the ALJ's evaluation of this medical opinion evidence is legally insufficient. Because the ALJ failed to adequately address the supportability and consistency of CNP Robinson's and Dr. Valeriano's opinions and because her explanations are not supported by substantial evidence, this matter must be remanded. *Watkins v. Barnhart*, 50 F.3d 1297, 1301 (10th Cir. 2003) ("We cannot simply presume the ALJ applied the correct legal standards in considering [a doctor's] opinion.").

B.      **Remaining Claims**

Ms. Varela advances two additional arguments in support of her Motion to Reverse or Remand. However, because the Court concludes that remand is required as set forth above, it

---

[21] *See* fn. 14, *supra.*

21

will not address the remaining claim of error. *See Wilson v. Barnhart*, 350 F.3d 1297, 1299 (10th

Cir. 2003) (explaining that the reviewing court does not reach issues that may be affected on

remand).

### IV.  Conclusion

For the reasons stated above, Ms. Varela's Motion for Remand (Doc. 12) is well-taken

and is **GRANTED**.

_____

**JOHN F. ROBBENHAAR**
**United States Magistrate Judge**
**Presiding by Consent**